IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONCIERGE COMPOUNDING PHARMACEUTICALS, INC.<br>1887 Whitney Mesa Drive<br>Henderson, Nevada 89014-25069,<br><br>       Plaintiff,<br>v.<br><br>EXPRESS SCRIPTS, INC.<br>One Express Way<br>St. Louis, Missouri 63121,<br><br>       Defendant. | )<br>)<br>)<br>) Case No.<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Concierge Compounding Pharmaceuticals, Inc., by its undersigned attorneys, states the following as its complaint against Defendant Express Scripts, Inc.

### Nature of the Case

1. This case arises out of Defendant's unlawful attempt to terminate Plaintiff from its network of pharmacies effective January 14, 2015. Defendant's termination is improper and baseless. Defendant has not identified to Plaintiff any facts that would allow a termination, and there are none. If the termination is not preliminarily enjoined, Plaintiff is at risk of permanently losing customers, and its business will be all but destroyed. Immediate relief is required to prevent irreparable harm.

### Parties, Jurisdiction and Venue

2. Plaintiff Concierge Compounding Pharmaceuticals, Inc. ("Concierge") is a Nevada corporation with its principal place of business in Henderson, Nevada.

3. Defendant Express Scripts, Inc. ("ESI") is a Delaware corporation with its principal place of business in Missouri. ESI is a pharmacy benefit manager, or "PBM."

8961117_1

4. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and the parties are citizens of different States.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Provider Agreement mandates that litigation occur in Delaware.

### Delivery of Pharmacy Services

6. Concierge is a fully licensed, single-location retail pharmacy. It is licensed in 40 states and fills prescriptions for patients nationwide. Concierge specializes in providing "compounded" prescription medications. Compounding consists of combining two or more ingredients to create a medication customized to an individual patient's specific needs. Compounding is fundamental to the pharmaceutical profession, and before manufacturers produced drugs in mass quantities, it was the original way that medicines were made and the standard means of providing prescription medications. Compounding is not performed at most large-chain pharmacies.

7. Pharmacy Benefit Managers ("PBM") are an integral part of the delivery of health care benefits. By way of contracts or employment relationships with insurance carriers, health benefit plan sponsors, or other third-party payers, PBMs manage the prescription drug coverage provided by the carrier, plan sponsor, or other third-party payer. PBMs contract with pharmacies, or third party pharmacy services administrative organizations ("PSAOs"), to provide prescription drugs to insureds and health plan members, and they process and pay claims for prescription drugs.

8. ESI is the nation's largest PBM. Together, with Medco (now owned by ESI) and Caremark, these PBM's administer approximately 80% of insured prescriptions and 90% of insured mail order prescriptions. Upon information and belief, each of these companies has annual revenues exceeding $15 billion.

9. ESI and Medco manage drug benefits for over 200 million Americans. It is believed that this amounts to 95% of Americans with prescription drug coverage. By engaging in anti-competitive and other unlawful behavior, ESI and Medco became two of the three largest PBM's controlling all aspects of prescription drug benefit plans, including creating formularies of preferred medicines, negotiating with drug manufacturers for discounts and rebates negotiating with pharmacies to establish retail networks for dispensing drug, and establishing automated processes for determining (often called "adjudicating") coverage eligibility at the point of sale. ESI also owns and operates its own mail order pharmacy to fill prescriptions directly and takes affirmative steps to direct the flow of prescriptions to its own pharmacy to increase market share, slow down the costs and eliminate competition. Pharmacies have no choice in the market but to acquiesce in ESI's demands or be effectively shut out of the market.

10. Typically, a customer who has prescription drug coverage under a health plan is required to pay a portion of the cost of the drug, and the balance is paid by the PBM on behalf of the health plan. The portion paid by the customer is referred to as a "copayment" or "copay."

### The Provider Agreement

11. On or about November 1, 2013, ESI and ABC entered into a written contract (the "Provider Agreement") pursuant to which Concierge became a participating provider of prescription drugs in ESI's network of pharmacies. A copy of the Provider Agreement (not including all of its exhibits and schedules) is marked as **Exhibit A**. Concierge is a Provider under the Provider Agreement, and the Provider Agreement is the contract that governs the relationship between Concierge and ESI.

12. The Provider Agreement allows ESI to immediately terminate Concierge from its pharmacy network in twelve specific circumstances. In that regard, section 4.2.c provides:

> 4.2.c. **Immediate Termination.** Notwithstanding the provisions contained in Section 4.2.b, ESI shall have the right to immediately terminate this Agreement upon written notice to Provider in the event that: (i) Provider ceases to be licensed by the appropriate licensing authority; (ii) Provider submits a fraudulent prescription drug claim or any information in support thereof; (iii) Provider is insolvent, goes into receivership or bankruptcy or any other action is taken on behalf of its creditors; (iv) Provider fails to comply with the claims submission and processing requirements as set forth in Section 2.3 or fails to comply with Section 2.4 of this Agreement or any of ESI's policies and procedures including, but not limited to, the Provider Manual and/or quality assurance and/or utilization review procedures; (v) no longer meets credentialing requirements; (vi) ESI determines that the Provider is dispensing Covered Medications in violation of any applicable law, rule and/or regulation; (vii) Provider is excluded from participating in any federal or state health care program; (viii) Provider fails to maintain insurance as required by Section 6.1 of this Agreement; (ix) Provider has not submitted a claim to ESI for ninety (90) calendar days; (x) Provider (or any Pharmacy) failed to document purchases of prescriptions drugs sufficient to support its claims for reimbursement to ESI; or (xii) ESI determines that Provider's continued performance of services poses a risk to the health, welfare or safety of any Member.

### The Termination Letters

13. On August 4, 2014, ESI sent Concierge a letter (the "First Termination Letter"), a copy of which is attached as **Exhibit B.** The First Termination Letter purports to terminate Concierge from ESI's network of pharmacy providers on September 1, 2014. The First Termination Letter asserted that Concierge incorrectly answered a question set forth on ESI's credentialing questionnaire.

14. Concierge disputes ESI's accusation related to the credentialing questionnaire.

15. Nevertheless, ESI, over strenuous objection and denial by Concierge terminated Concierge from the ESI network as a Provider on September 1, 2014.

16. Interestingly, despite the fact that ESI terminated Concierge effective September 1, 2014, ESI expressly carved out TRICARE beneficiaries and indicated that Concierge should continue providing pharmaceuticals and would remain a participating provider providing Covered Medications to TRICARE beneficiaries.

17. Concierge disputed and continues to dispute ESI's basis for the First Termination Letter resulting in removal of Concierge as a Provider on September 1, 2014, except for TRICARE beneficiary claims.

18. On Friday, January 9, 2015, ESI drafted correspondence terminating Concierge as a participating provider for Department of Defense/TRICARE beneficiaries effective a mere five days later (including the weekend) on January 14, 2015, ("Second Termination Letter"). This correspondence indicates that it was served via FedEx. A true and accurate copy of this correspondence is attached hereto as **Exhibit C.**

19. ESI's Second Termination Letter is in violation of the Network Provider Manual ("NPM"), § 11.6 that requires ESI to notify Concierge "in writing of proposed action to terminate Network Provider's status and an authorized TRICARE provider, when Network Provider falls within the PBM's certifying responsibility and Network Provider fails to meet the requirements of 32 CFR § 199.6." A true and accurate copy of the NPM is marked as **Exhibit D.**

20. Prior to the Second Termination Letter, ESI failed to notify Concierge of any proposed action to terminate Concierge as a Provider for TRICARE beneficiaries.

21. Concierge has performed all material obligations for Department of Defense/TRICARE beneficiaries.

22. Concierge has met and satisfied all criteria for TRICARE authorized Network Provider status.

23. ESI failed, under 32 C.F.R. 199.6 to notify TRICARE participants of Concierge's sudden, unexpected and improper removal as a Provider to TRICARE beneficiaries or, if TRICARE beneficiaries were notified pursuant to law, ESI purposefully withheld any notification of termination from Concierge.

### Irreparable Injury to Concierge

24. ESI'S wrongful termination of Concierge as a TRICARE provider will result in irreparable harm by putting at risk the lives of the many patients that Concierge serves and preventing Concierge from providing a smooth and seamless transition for these patients.

25. Concierge provides services for many patients who depend upon their medications, coverage for which is supposed to be provided by ESI pursuant to the Provider Agreement. These patients, rely on Concierge to fill their prescriptions on a monthly basis. The premature, improper and unfounded termination of the Provider Agreement as it pertains to TRICARE beneficiaries will severely disrupt the continuity of care these patients – including servicing of nearly 500 prescriptions monthly - are entitled to and currently do receive.

26. ESI's termination of Concierge will result in diversion of patients – many to ESI's own specialty pharmacy – and Concierge will lose, overnight, revenue that will cause it to close its doors and terminate all 37 employees.

27. Furthermore, Concierge's reputation in the industry of PBM's and others will be permanently damaged. Concierge will have to report the termination of its contract with ESI and such termination will have a domino effect with other PBM's, accrediting agencies, and industry players leading to the destruction of Concierge's business for this separate reason.

28. Concierge has no adequate remedy at law which could compensate it for the impending injury that ESI's actions will cause if they are allowed to go forward.

8961117_1

## COUNT I
## BREACH OF CONTRACT

29. Concierge incorporates by reference as though fully set forth herein paragraphs 1-28 of the Complaint.

30. Concierge and ESI have a long-standing relationship whereby ESI has breached the Provider Agreement by attempting to terminate Concierge from its network of participating pharmacies.

31. ESI's termination of Concierge as a provider for Department of Defense/TRICARE beneficiaries is without proper notice and is a breach of the Provider Agreement.

32. The Provider Agreement also provides that ESI shall notify Concierge of any default under the contract; allow Concierge to cure any default; meet and confer regarding any dispute; and negotiate in Good Faith to resolve any discrepancy between the parties.

33. ESI failed to notify Concierge of any default under the Provider Agreement thereby negating Concierge's opportunity to cure said default.

34. ESI has not participated in any meet and confer or Good Faith negotiation as required by ESI's owns contracts regarding the purported TRICARE termination.

35. ESI's diversion of Concierge's patients and the associated revenue in connection therewith to ESI is a breach of the implied duty of good faith and fair dealing.

36. Excluding Concierge from ESI's pharmacy provider network will deprive Concierge of its ability to provide prescription drugs to Department of Defense/TRICARE beneficiaries.

37. Concierge has fully performed all material obligations under the Provider Agreement.

38. As a direct and proximate result of ESI's breach, Concierge has and will be damaged.

39. The harm to Concierge from ESI's termination will be irreparable. First, existing customers will be forced to locate new prescription drug suppliers on short, inadequate notice. Once Concierge's customers are forced to turn to other pharmacies, they are unlikely to return, and Concierge will permanently lose them to its competitors.

40. Second, any interruption in Concierge's ability to supply prescription drugs to its existing customers will harm its reputation among physicians and potential customers.

41. Third, termination of the Provider Agreement is also likely to result in the loss of business from existing and potential customers as physicians will refer patients to a pharmacy that can supply the needs of patients who *are* covered under ESI's pharmacy benefit management plan.

42. Termination from ESI's network will render Concierge insolvent and Concierge will be forced to close its business and layoff all of its employees.

## COUNT II
## BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

43. Concierge incorporates by reference as though fully set forth herein paragraphs 1-42 of the Complaint.

44. ESI has an obligation to carry out the Provider Agreement in good faith and deal fairly with Concierge.

45. Upon information and belief, ESI is enforcing a termination against Concierge to divert Concierge patients and revenue to ESI's own specialty pharmacy.

46. ESI is not acting in good faith and using improper and inaccurate assertions to terminate Concierge.

47.   ESI has not engaged in fair dealing with Concierge as there has been no notice to terminate Concierge's TRICARE provider status and five (5) days' notice is not good faith.

## COUNT III
## UNJUST ENRICHMENT

48.   Concierge incorporates by reference as though fully set forth herein paragraphs 1-47 of the Complaint.

49.   Upon information and belief, ESI is improperly terminating Concierge's status as a TRICARE provider to divert Concierge patients and revenue from Concierge to ESI.

50.   Concierge has invested in these patient relationships and ESI's attempts to poach these patients is self-serving and at the expense of Concierge.

51.   ESI is not entitled to nor deserving of the business associated with these patients as Concierge has provided services and invested money over the court of serving as a TRICARE provider.

52.   It is inequitable for ESI to accept and retain the benefit of diversion of Concierge's patients.

53.   As a result of ESI's action, ESI will be unjustly enriched by the business Concierge has developed and which ESI seeks to divert to its own specialty pharmacy.

## COUNT IV
## TORTIOUS INTERFERENCE

54.   Concierge incorporates by reference as though fully set forth herein paragraphs 1-53 of the Complaint.

55.   ESI has knowledge of the business relationships between Concierge and its patient base. ESI also has knowledge of Concierge's expectancy that it would maintain its business relationship with its patient base, and had knowledge of the fact that Concierge has invested substantial resources in developing and maintaining those relationships.

8961117_1

56. Despite having knowledge of these business relationships, ESI has tortuously interfered with such business relationships, without justification or excuse.

57. Further, upon information and belief, ESI intends to further tortiously interfere with Concierge's contractual and business relationships, in a manner both willful and intentional, without justification or excuse.

58. As a result of the actions of ESI, concierge has been injured and faces irreparable injury. Concierge is threatened with losing or has lost its business, income and/or goodwill.

### COUNT V
### DECLARATORY JUDGMENT

59. Concierge incorporates by reference as though fully set forth herein paragraphs 1-58 of the Complaint.

60. ESI and Concierge have a valid Provider Agreement governing the relationship of the parties.

61. There is a dispute as to the obligations and terms of the Provider Agreement.

62. Plaintiff respectfully requests this Court declare the parties rights and obligations pursuant to the Provider Agreement.

### COUNT VI
### INJUNCTIVE RELIEF

63. Concierge incorporates by reference as though fully set forth herein paragraphs 1-62 of the Complaint.

64. In violation of the Provider Agreement, ESI has purported to terminate Concierge as a TRICARE provider effective January 14, 2015.

65. ESI's wrongful termination has, and unless restrained by this Court, will continue to cause irreparable injury to Concierge's business, including, but not limited to the customers' need for prescriptions, the sustainability of the business, ongoing employment for employees, service provider relationships and the reputation of the pharmacy for which there is no adequate remedy at law.

66. ESI's wrongful conduct has proximately caused loss to Concierge in an amount to be determined at trial as well as an amount that cannot be financially recovered and for which the only recovery is injunctive relief.

WHEREFORE, Concierge Compounding Pharmaceuticals, Inc. respectfully requests that the Court enter judgment in its favor and against defendant, preliminary enjoin Express Scripts, Inc.

A. From terminating the Provider Agreement and removing Concierge as a participating provider for Department of Defense/TRICARE beneficiaries;

B. From contacting Concierge's patients in an attempt to transition them away from Concierge into ESI's own specialty pharmacy;

C. From any interference with Concierge's business relationships with its patients;

D. An award to Concierge for damages suffered, including but not limited to lost profits, in an amount to be proven at trial;

E. A declaration of the rights and responsibilities of the parties under the Provider Agreement;

F. An award of attorneys' fees and costs of this action;

G. An award of compensatory and punitive fees;

H. An award of pre-judgment interest; and

8961117_1

    I. Grant such other and further relief as the Court deems just.

              Respectfully submitted,

Dated: January 13, 2015   /s/ Michael A. Weidinger

Michael A. Weidinger (DE No. 3330)
Seton C. Mangine (DE No. 5574)
PINCKNEY, WEIDINGER, URBAN & JOYCE, LLC
1220 North Market Street, Suite 950
Wilmington, DE 19801
(302) 504-1497

Anthony Calamunci (*Pro Hac Vice Pending*)
ROETZEL & ANDRESS, LPA
20 South Clark Street, Suite 300
Chicago, Illinois 60603
(312) 580-1200

*Attorneys for Plaintiff Concierge Compounding Pharmaceuticals, Inc..*

# EXHIBIT A

## *SUBJECT TO THE CONTEMPORANEOUSLY FILED NOTICE OF REQUEST TO SEAL DOCUMENTS

# EXHIBIT B

## *SUBJECT TO THE CONTEMPORANEOUSLY FILED NOTICE OF REQUEST TO SEAL DOCUMENTS

# **EXHIBIT C**



January 9, 2015

Via Fed Ex

Concierge Comp Pharmaceuticals
Pharmacy Owners
1887 Whitney Mesa Drive
Henderson, NV 89014

PSAO: Amerisource Bergen
Attn. Legal Department
505 City Parkway West Suite 300
Orange, CA 92868

Re: Termination of Concierge Comp Pharmaceuticals, NCPDP 2993043 ("Provider")

Dear Provider,

On August 4, 2014, Express Scripts, Inc. ("ESI") and Medco Health Services Inc. ("Medco") (collectively, "Express Scripts'") sent Provider a termination notice. The notice stated that the Provider Agreement remained in full force and effect for the purposes of providing covered medications to Department of Defense/TRICARE beneficiaries. Provider was terminated from the remainder of Express Scripts' network(s) on September 1, 2014.

At this time, Express Scripts has determined the Provider Agreement will be terminated in its entirety effective January 14, 2015 (the "Termination Date") for the reasons already stated in the August 4, 2014 termination notice. From and after the Termination Date, Provider will no longer be considered a participating provider for Department of Defense/TRICARE beneficiaries.

Please retain a copy of this letter as Provider's official notice of termination. Should you have any questions regarding this notification, please contact me.

Sincerely,

Bonnie Roberts
**Director, Provider Credentialing**
**Express Scripts, Inc.**
**Phone: 314-684-5102**
**Email: Bonnie.roberts@express-scripts.com**

Case 1:15-cv-00037-RGA   Document 3   Filed 01/13/15   Page 17 of 17 PageID #: 40

# EXHIBIT D

## *SUBJECT TO THE CONTEMPORANEOUSLY FILED NOTICE OF REQUEST TO SEAL DOCUMENTS